### WILE *v.* ROCHESTER IMPROVEMENT COMPANY.

[No. 3,077.   Filed April 3, 1900.]

VENDOR AND PURCHASER.—*Payment.*—*Instalments.*—*Complaint.*—
Where, in an action to recover instalments of purchase money of
real estate, the promise to pay the instalments for the recovery of
which the action was brought was not to be performed concurrently
with the execution of a conveyance, it is not necessary to aver per-
formance, tender of performance or readiness and ability to perform
on the part of plaintiff.   *pp. 422-425.*

SAME.—*Sales of Real Estate.*—*Distribution of Lots.*—*Lotteries.*—The
right of a vendor to recover the purchase money for a lot sold to
defendant was not affected by a scheme of distribution by lot of the
lots in the addition adopted and pursued by the purchasers among
themselves.   *pp. 425-431.*

APPEAL AND ERROR.—*Bill of Exceptions.*—In the provision of the stat-
ute for giving time for the presentation of a bill of exceptions
beyond the term, the word "term" means that term at which the
decision was made and the exception thereto was taken.   *p. 431.*

From the Fulton Circuit Court.   *Affirmed.*

*I. Conner* and *J. Rowley,* for appellant.

*G. W. Holman* and *R. C. Stephenson,* for appellee.

BLACK, J.—The complaint of the appellee against the
appellant was held sufficient upon demurrer.   It was filed
on the 1st day of February, 1898, and it was alleged therein
that the appellant was indebted to the appellee in the sum
of $120 as purchase money due on lot nine in the Rochester
Improvement Company's addition to the town of Rochester,
Fulton county, Indiana, purchased by the appellant of the
appellee at and for the sum of $200; that on September 12,
1895, the appellee and the appellant executed a written
agreement respecting such purchase, a copy of which was
made an exhibit.   It was further alleged that under the
terms of said agreement the appellant was to pay in weekly
instalments of $1 per week the sum of $190, he having paid
$10 on the purchase when made; that on December 9, 1895,
he paid $20 thereon; that, under the terms of said contract,

there was due and owing to the appellee from the appellant, as weekly instalments, the sum of $120; that the appellee had complied with all the obligations resting upon it under said contract; that the appellee "now waives the right or option of forfeiture for non-payment of the weekly instalments, and offers, and is willing, and ready, and able to execute and deliver to the defendant, and now brings into court for delivery to said defendant, a deed for said lot, on the payment of the weekly instalments due under said contract, or on the rendition of a judgment in this action for the sum now due, reserving, however, a vendor's lien on said lot for the remainder of the purchase money. The plaintiff expressly reserves and asks the court that all her rights for the future payments be reserved and not considered as included in this litigation, so as to prevent future recovery for non-payment of the weekly instalments yet to become due," etc.

The agreement filed as an exhibit, dated September 12, 1895, and signed by both parties in duplicate, purported to witness that the appellee on that date sold to the appellant lot number nine in said addition, "the number of the lot to be hereafter determined by a distribution of the lots in said addition among the lot purchasers, in the same manner that the lots in the University addition to Rochester were distributed, and the number of the lot so determined to be hereafter inserted herein". The terms and conditions of the sale were set forth as follows: "The purchase price thereof being $200, $10 of which has been paid to said company, the receipt whereof is hereby acknowledged, and the further payment of $190 to be paid to said company in weekly payments of $1 per week each week until the full amount of the purchase price of said lot is fully paid. Now, if the said M. Wile shall well and truly pay the said $190 in weekly payments of $1 per week each week, commencing with September 12, 1895, upon full payment of such purchase price it is hereby agreed that the

Rochester Improvement Company will make and execute to the said M. Wile or his heirs or assigns, a warranty deed for such lot, free and clear of all liens and encumbrances whatsoever. It is agreed that until such deed is made and delivered to said purchaser, the said company will pay the county, State and ordinary town taxes levied on said lot. And the said M. Wile agrees to pay said sum of $200 as herein above set forth, at the Citizens State Bank of Rochester, Indiana, without relief from valuation or appraisement laws. Said M. Wile agrees, in consideration of the reduced price at which said lot is sold, and the payment of taxes by said Rochester Improvement Company, and the omission of interest by said company, and the location of the shoe factory as provided in the subscription for the purchase of said lots, that time is and shall be deemed and taken as of the essence of this contract, and that unless such payments therein agreed to be made by said M. Wile be made to the company in the manner and at the place and within thirty days of the time they, respectively, become due, said M. Wile shall, at the option of said company, forfeit and be barred from all rights, remedies, and actions, either in law or equity, upon or under this contract, and this contract shall be void, and the sum or sums paid hereon shall be liquidated damages, and retained by said Rochester Improvement Company, in which event said M. Wile shall be released from further payments. Said M. Wile further covenants that, in the event he has possession of said premises, and fails on his part to perform any of the above covenants or agreements herein contained, he will yield and deliver to the Rochester Improvement Company quiet and peaceable possession of said premises, that the said improvement company may immediately after such failure reënter and take possession of the same without notice," etc.

The appellant, in argument, assuming the action to be one for specific performance, objects to the complaint upon the grounds that appellee's ownership in fee of the land

was not shown; that there was not a sufficient averment as to the tender of a deed, and that the averment relating to a deed was not sufficient with respect to the kind of deed.

The appellant's characterization of the action is not correct. It is an action to recover instalments of purchase money due; the time for payment of the last instalment and for the execution of the conveyance by the plaintiff not having arrived at the commencement of the action. The promise to pay the instalments, to recover the amount of which the action is brought, was not to be performed concurrently with the execution of a conveyance, but was an independent promise. Therefore, it was not needed in the complaint to show performance, or tender of performance, or readiness and ability to perform on the part of the plaintiff.

In *Leonard* v. *Bates*, 1 Blackf. 172, it was held, that, if the purchase money for real estate be payable by instalments, the first before the deed is to be made, the second on the day on which the deed is to be made, and the last on a subsequent day, the promise to pay the first instalment is independent, and the promise to pay each of the other instalments is dependent; that an action will lie on the promise to pay the first instalment without showing a previous execution of the title or offer to execute it, but not so upon the promise to pay the second or third instalments.

In *Cunningham* v. *Gwinn*, 4 Blackf. 341, it was held that, although a note given in part payment of certain real estate be due before the time appointed for the execution of the deed, yet, if suit on the note be not commenced until after the time when the deed was to be executed, the defendant may plead in bar that the plaintiff did not on the day fixed by the contract execute, or offer to execute, the deed. See, also, *Irwin* v. *Lee*, 34 Ind. 319; *Summers* v. *Sleeth*, 45 Ind. 598. The objections of the appellant to the complaint do not seem to be well taken.

The appellant answered in two paragraphs, the second

a general denial. In the first, which was quite long and somewhat rambling and indirect, it was stated, in substance, that the appellant was informed that on the 2nd of August, 1892, the appellee had acquired some interest by deed to certain land and lots in Fulton county, Indiana, described, on which the appellee executed a mortgage to persons named, to secure the purchase money for the same, for which the appellee executed promissory notes to the grantors, in sums stated, to fall due in each year from date for thirteen years; that all of the notes not yet due remained unpaid; that the appellee caused said land to be platted and laid out into town lots fifty feet wide and 140 feet deep, to the number of 173, which lots were and continued to be of unequal value, said lot nine being of no more than acre value for farm purposes; that afterward the appellee arranged to sell and dispose of said lots by taking subscriptions from citizens of Rochester and others at a uniform price of $200 notwithstanding their unequal values; and, as an inducement to such subscribers, it was agreed by the appellee to procure the location of a shoe factory on said addition that would constantly employ not less than 150 persons in the manufacture of shoes, with capacity for 300 pairs daily, for a term of five years; that, to induce the location of such a factory, the appellee agreed to pay a bonus of $10,000, which was accepted by the Rochester Shoe Company, a corporation organized under the laws of this State, the bonus to be paid on the conditions above stated; that on the 6th of August, 1896, said shoe factory, which had been so located, became insolvent, and was placed in the hands of a receiver, and the property constituting the shoe factory was sold by the receiver, under order of court, to Lyman M. Brackett, and said Rochester Shoe Company was dissolved, and had not operated since May, 1897, so that one of the chief inducements offered to the appellant and others to subscribe for the lots had wholly failed. It was further alleged that after the subscriptions had been so

procured, for the purpose of distributing the lots conformably with the stipulation in the exhibit to the complaint, the appellee and a number of the subscribers met, and upon the suggestion and with the assistance of the appellee, represented by its officers and attorneys, certain of the lots were awarded to the subscribers severally, including the appellant, by placing the numbers of lots severally upon tickets, and putting them in a box, and then placing the names of subscribers severally upon tickets, and putting them in another box, whereupon two persons, who were blindfolded, simultaneously drew from the boxes a name and a number of a lot, until all the names were drawn; that in each instance the lot drawn was awarded to the subscriber whose name was so drawn; and this constituted the selection of the lot, to be inserted in the bond like that attached to the complaint.

There was a reply in two paragraphs to the first paragraph of answer, the first paragraph of reply being a general denial. In the second paragraph, a demurrer to which was overruled, it was shown that the appellee was organized as a corporation in May, 1892, for the purpose of promoting the interests of Rochester and vicinity by establishing factories; that a tract of land within said town was purchased August 26, 1892, by the appellee, and replatted; streets and alleys being established, and the plat was duly recorded; that in July, 1895, one William H. Ogan entered into a written contract with appellee for the sale of 150 of the lots, to be sold for $200 each, and the same day, as a part of the same transaction, a written contract was entered into by and between the appellee and one W. H. Stoddard, in which it was provided that, if said Ogan should succeed in selling said 150 lots, Stoddard should erect, on certain of the lots specified in said addition, a good, substantial two-story brick building, of dimensions stated, and properly equip it as a shoe factory, and should run said factory for at least five years from October 1, 1895, and employ therein at least 100 persons on an average, and should organize and

incorporate the Rochester Shoe Company, Stoddard to remain with the company and carry on his shoe manufacturing business in said town for five years; and it was also provided that the appellee would donate the lots on which the factory was to be located and $10,000 out of the proceeds of the sale of the lots.   It was alleged that, pursuant to said agreements, Ogan, on July 18, 1895, provided himself with subscription papers, all alike, a copy of which was set forth, being to the effect that the signers subscribed for the number of said lots opposite their respective names, at $200 per lot, to be paid for, $10 down, and the balance $1 per week, without interest, the lots to be free from taxes till paid out, as per terms stated in a bond for deed to be given the subscriber on payment of $10, which was to be paid when all the lots were subscribed for, the lots "to be distributed same as college lots."   It was stated further in the subscription paper that the purpose of the sale of the lots was to locate on said addition a shoe factory described, being like that described in the contract with Stoddard, to employ 100 hands, etc., "all of which is guaranteed under contract with said Improvement Company." It was further alleged in the reply that appellant subscribed for one lot; that on July 10, 1895, subscribers for 150 lots, in what is known as the College addition to said town, met and made their distribution of lots, under article four of the proposition of the projector of the enterprise, reading as follows:   "The subscribers may then determine in their own way the manner of selecting lots"; that on September 21, 1895, the subscribers to said Improvement Company lots met, and for themselves, and without participation therein by the appellee, or any one for or on behalf of the appellee, determined the method of distribution, and then proceeded to, and did, make the distribution, the lot described in the bond sued on falling to the appellant.   It was admitted in this reply that a purchase-money mortgage rested upon said lot when said bond was executed, but it was alleged that said lot "is

now released from the operation of said mortgage," and that the lot "is free and clear of any and all encumbrances, except the one reserved in this action, and that the deed brought into court as averred in the complaint conveys a good and fee simple title thereto." It was averred that said Stoddard and said Rochester Shoe Company had fully complied with said contracts; that said factory was built as agreed; that it had employed for each working day in the year an average of not less than 100 persons since its commencement, and was so operated while in the hands of the receiver; that the original shoe company was forced into the hands of a receiver, and its property was sold, but a new corporation was formed, viz., the Rochester Shoe Company of which said Stoddard was and since the organization had been the manager and active spirit; that said company had built a brick addition forty by seventy feet, added a large quantity of new machinery, and was in operation, employing over 100 persons; that the appellee has of record in the recorder's office of that county a contract with the new company providing, under penalty of forfeiture of the property, for the maintenance and operation of said property, as originally designed and agreed; and the appellee denied all allegations in the second paragraph of answer not replied to specifically by this reply.

The appellant in argument claims the theory of the first paragraph of answer to be that the manner of distribution provided for in the subscription paper and in the bond sued on, and disclosed by the answer, was void, as against public policy; and further claims that the reply does not show that the mode of distribution set forth in the answer was not in fact pursued, but that the reply only shows, concerning this matter, that the appellee did not participate in this distribution.

The appellee contracted with Stoddard in relation to the shoe factory, and at the same time contracted with Ogan to sell 150 lots. Ogan provided himself with the subscription

paper, on which the appellant and others subscribed for lots, reference being made therein to the bond for a deed which each subscriber should receive. In the subscription paper it was stated that the lots were to be "distributed same as college lots." The bond contained a provision that the number of the lot for which it was given was to be there-after determined by a distribution of the lots among the purchasers in the same manner that the lots in the University addition to Rochester were distributed, and that the number of the lot so determined was to be inserted in the bond. The reply says that the subscribers met "and for themselves, and without participation therein by the plaintiff, or any one for or on her behalf, determined the method of distribution, and then proceeded to and did make the distribution."

The distribution of the college lots, as appears from the reply, had been made by the subscribers thereto before the date of the subscription to the appellee's lots. The manner which the subscribers to the college lots actually adopted or pursued is not stated either in the answer or reply, but the manner of distributing the lots of the appellee is set forth in the answer, wherein it is alleged that the appellee participated. The paper subscribed by purchasers of the "college lots" did not provide for a scheme of chance, or a lottery, but provided that the method of distribution should be agreed upon by the subscribers. It does not appear in any of the pleadings that the appellee knew what method they pursued, nor is the method actually pursued by them shown. The method pursued by the subscribers for the appellee's lots, as stated in the answer, was a scheme of chance, and contrary to public policy; but, upon the facts stated in the reply, it does not appear that such a method was intended or expected by the appellee, and it does affirmatively appear that the appellee did not take part in it.

The right of the appellee to recover the purchase money was not affected by the scheme of distribution by lot,

adopted and pursued by the subscribers among themselves. *Washington Glass Co.* v. *Mosbaugh*, 19 Ind. App. 105. The appellant has not suggested any objection to the reply except upon the matter of the distribution of the lots. Therefore, we need only say that we regard the reply as sufficient.

The appellant's motion for a new trial was overruled, and under the assignment of error relating to this ruling counsel have questioned an instruction given to the jury. The instruction was not saved by bill of exceptions, and the record does not show that it was filed. Therefore, it can not be treated as a part of the record. Other causes in the motion for a new trial can not be considered without the evidence, and, though there is in the transcript a bill of exceptions purporting to contain the evidence, it is not properly in the record. The motion for a new trial was overruled at the term of the trial, and the appellant then excepted to this ruling, but no time for the presentation of a bill of exceptions was given them. At a subsequent term a motion in arrest of judgment was overruled, and thereupon judgment was rendered, and time was then given extending beyond that term to prepare and file the appellant's bill of exceptions.

In the provision of the statute for giving time for a bill of exceptions beyond the term, the word "term" means that term at which the decision was made and the exception thereto was taken. §638 Burns 1894, §626 Horner 1897; *Sohn* v. *Marion, etc., Co.,* 73 Ind. 77, 79.

Judgment affirmed.