ALBEE HAMMOND HOMES, INC., ET AL. *v.*
BICKNESE, D/B/A BICK SIGN CO.

[No. 269A36. Filed December 1, 1969. Rehearing denied January 9, 1970. Transfer denied April 24, 1970.]

6

*William J. Moran,* of Hammond, for appellants.

*Gilbert Gruenberg,* of Gary, for appellees.

LOWDERMILK, P.J.—This appeal involves two causes of action which were consolidated for trial and were also consolidated for the purpose of this appeal by order of this court on March 11, 1969. The appellees, plaintiffs below, brought their

action on a written contract between themselves and the defendants below, appellants herein, Albee Hammond Homes, Inc., which was assigned number 65 PCC 256 in the Porter Circuit Court. Appellees raised the same cause of action against the appellants in a cross complaint in an action filed by appellants against appellees for defamation, which was assigned number 65 PCC 742 in the Porter Circuit Court.

Appellees' complaint was in one legal paragraph asserting a written contract between themselves and appellants for erection of ten advertising billboards in No. 65 PCC 256. They alleged the same contract in a cross complaint in the companion case against Albee Homes, Inc., and in which cross complaint they claimed Albee Homes, Inc., was the real party in interest. These causes were placed at issue by appellants' answer to both complaint and cross complaint by denial of appellee's allegations.

Appellants filed their action number 65 PCC 742 in one legal paragraph asserting defendants-appellees had defamed them by causing a malicious, slanderous letter to be written. The issues were closed by appellees' filing an answer in denial.

Trial was had by the court, which entered its special findings of fact and conclusions of law and entered judgment thereon against appellants on their complaint and in favor of appellees on their cause of action, and awarded appellees $9,083, plus $2,500 attorneys' fees.

The special findings of fact and conclusions of law in cause number 65 PCC 256 reads as follows, to-wit:

### "SPECIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

"The court at the request of the defendant ALBEE HAMMOND HOMES, INC. and the cross-defendant ALBEE HOMES, INC. makes the following Findings of Fact in this case and states Conclusions of law thereon as follows: (65-PCC-246)

*Findings of Facts*

"1. On April 17, 1963, there was entered into the following contract:

TO: Donald D. Bicknese
 Evelyn H. Bicknese
 Bick Sign Company

Gentlemen:

Albee Hammond Homes, Inc., R.R. #2, RT. U.S. 30, Crown Point hereby authorizes and directs you to paint and execute an advertising display at locations and at prices per month as indicated below, for Albee Hammond Homes, Inc., R.R. #2, U.S. 30, Crown Point, as per design to be mutually agreed upon, the specifications and more particular description of which said design are separately set out, signed by the parties attached hereto, and made a part hereof, in a first class workmanlike manner, using the best materials now obtainable and to maintain the same for a period of Three (3) years.

Locations as agreed upon, per attached sheet agreement.

*Void unless locations are signed and accepted by Joel Kaufman.*

Note—All accounts are payable in 30 equal monthly payments, the first of which is due and payable upon the completion of the work on the selected locations. Last 6 months to be paid in advance Total monthly charge $200.00 . . .

For the services specified herein Albee Hammond Homes, Inc., R.R. #2, Rt. U.S. 30, Crown Point, Ind. agrees to pay monthly in advance to Donald D. Bicknese and Evelyn H. Bicknese, or to whomsoever they may designate and at any place that Donald D. Bicknese and Evelyn H. Bicknese may designate, the aggregate sum of the price per month indicated above. Upon the failure of Albee Hammond Homes, Inc., Crown Point, Ind. to make any one of the monthly payments due under this agreement, Donald D. Bicknese and Evelyn H. Bicknese shall have the right to declare all of the remaining monthly payments provided by this agreement, due and payable without demand. The failure of Donald D. Bicknese and Evelyn H. Bicknese to exercise such right upon any default shall not be construed as a waiver of the right to so exercise such right upon any subsequent default.

"In the event of default of three monthly payments Albee Hammond Homes, Inc., R.R. #2, U.S. 30, Crown Point, Ind.

agrees that the entire balance specified in this contract shall immediately become due and payable and agrees to pay reasonable attorney fees and costs due to such non-payment.

"In the event that any of the above locations become lost during the life of this contract, or cannot be secured or in case at any time during the life of this contract any of the above displays are obstructed from view, or are wholly or partly destroyed or defaced, from any cause beyond your control, including the action of the natural elements, the happenings of any such events shall not act as a breach or termination of this contract, but such lost or obstructed displays shall be replaced at other locations to be mutually agreed upon, and such destroyed or defaced displays shall be restored to their former condition any such nonprocurable locations shall be replaced with other locations to be mutually agreed upon; and the amount of advertising lost or not delivered while such replacement or substitution is being made shall be made up in an equivalent amount of advertising at the expiration of this agreement or at the election of Albee Hammond Homes, Inc., the following month's payment may be reduced to a pro-rated basis based on $20.00 per sign per month, for the time that any sign or signs is or are lost to advertising during the preceding month.

"It is agreed that Donald D. Bicknese and Evelyn H. Bicknese reserves the right to refuse or to alter any copy which said Donald D. Bicknese and Evelyn H. Bicknese may deem for any reason objectionable or undesirable.

"It is agreed that Albee Hammond Homes, Inc., Crown Point, Ind. shall in no manner be considered the owner or lessee of the advertising displays herein above mentioned and that Albee Hammond Homes, Inc., Crown Point, Ind. has no further right or control in or to the above advertising displays than are herein specified.

"For the above Albee Hammond Homes, Inc., Crown Point, Ind. hereby promises to pay to Donald D. Bicknese and Evelyn H. Bicknese the aggregate sum indicated above $7,200.00 Dollars, in monthly installments as above provided, beginning on the date of the completion of the painting of the selected displays and the rendering of bills therefor; we further agree to pay for any displays not painted by reason of failure on our part to furnish or approve copy within fifteen (15) days after the date of this contract.

"It is expressly agreed that Donald D. Bicknese and

Evelyn H. Bicknese are not bound by any stipulations, representations, or agreements not embodied in this contract.

/s/ Joel Kaufman
Address: 7718 Lincoln Hwy.
Crown Point, Indiana

ACCEPTED:
/s/ Donald D. Bicknese
Donald D. Bicknese
/s/ Evelyn H. Bicknese
Evelyn H. Bicknese

Address: 1116 Aetna St.
Gary, Indiana

"2. That on May 16, 1963, the following exhibit was signed by Donald Bicknese and Joel Kaufman:

"3. That at that time Joel Kaufman was the manager and general agent of Albee Hammond Homes, Inc.

"4. That Albee Hammond Homes, Inc., was an agent of the cross-defendant Albee Homes, Inc., and the contract mentioned in Special Findings Nos. 1 and 2 was executed for and on behalf of Albee Homes, Inc., which was the undisclosed principal in and to such contract.

"5. That in compliance with said contract, the cross-complainants erected ten signs at locations agreed upon between the parties; that the signs were erected on the folowing dates:

(a) 661 Joliet Street, Dyer, Indiana—July 10, 1963
(b) Lot 11, Block 30, Southland 3rd Subdivision, Lake County, Indiana—June 20, 1963
(c) Northeast corner U.S. Highway 41 and Indiana Highway 8—June 20, 1963
(d) Southeast corner of 604 Brick Street, Valparaiso, Indiana—June 20, 1963
(e) 5600 West Ridge Road, Gary, Indiana—July 17, 1963
(f) Chicago Heights, Illinois—June 10, 1963
(g) Sign on U.S. Highway 41, 1½ miles North of U.S. Highway 30—June 10, 1963
(h) Sign opposite Blockhouse on Indiana Highway 55 near its intersection with 60th Avenue, Gary, Indiana—July 17, 1963
(i) Standard Oil Station—U.S. Highway 30 and Indiana Highway 51—August 6, 1963
(j) Southeast corner U.S. Highway 30 and Indiana Highway 53—June 10, 1963

"6. That on August 6, 1963, the cross-complainants made a demand on the cross-defendant for said payments then due under the contract.

"7. That the cross-defendant Albee Homes, Inc. failed and refused to pay any amount due on said contract and that said sum under the terms of the contract became immediately due and owing.

"8. That the cross-complainants were compelled to employ an attorney to enforce the terms of the contract, and that his reasonable services in conection therewith are worth $_____.

"9. That due to a windstorm on or about August 20, 1965, the sign at U.S. Highway 30 and Indiana Highway 53 was blown down and was not replaced.

"10. That the cross-complainants have fully performed all of the terms of the contract.

"11. That the cross-defendant Albee Homes, Inc. has failed and refused to perform any part of the contract by it to be performed.

"12. That the cross-complainants Donald D. Bicknese and Evelyn Bicknese, by virtue of the breach of contract by the cross-defendant Albee Homes, Inc., were damaged to the extent of $6,960.00 plus interest from August 6, 1963.

### Conclusions of Law

"As conclusions of law upon the facts, the Court states:

"1. That the law is with the cross-complainants Donald D. Bicknese and Evelyn H. Bicknese and against the cross-defendant Albee Homes, Inc.

"2. That the cross-complainants Donald D. Bicknese and Evelyn H. Bicknese are entitled to a judgment against Albee Homes, Inc., in the sum of Six Thousand Nine Hundred Sixty Dollars ($6,960.00) plus interest from August 6, 1963, at the rate of Six Per Cent (6%) per annum, plus a judgment for $2500 for attorney fees, and their costs herein expended.

JUDGE, PORTER CIRCUIT COURT"

There was a further finding of fact in cause 65 PCC 742 in which the court found and concluded that the law was with the appellees and against appellants and that appellants take nothing from the appellees.

The special findings and conclusions in 65 PCC 742 are omitted from this opinion for the reason that any error pertaining to that cause of action was especially waived by appellants in oral argument.

A *nunc pro tunc* judgment correcting an original judgment of April 7, 1968, was entered by the court on September 20, 1968, and is as follows:

## "JUDGMENT

"The court on April 7, 1969, entered 'Nunc Pro Tunc' judgment effective as of September 20, 1968, as follows:

"The court on its own motion now corrects 'nunc pro tunc' its judgment in this cause as effective September 20, 1968, to read as follows:

"The court having entered its special findings of fact and stated its conclusions of law thereon, now adopts the same as its findings of fact and conclusions of law in both cases.

"It is considered, adjudged and decreed that the plaintiffs, Albee Hammond Homes, Inc., Albee Homes Inc., and William Gross take nothing by way of their complaint against the defendants in Cause No. 65-PCC-742.

"It is further considered, adjudged and decreed that Cross-complaints Donald D. Bicknese and Evelyn H. Bicknese in Cause No. 65-PCC-742 have and recover from Albee Homes, Inc., the sum of $9,083 plus $2,500 attorney's fees which judgment shall bear interest at the rate of six (6) percent per annum from this date.

"And, the court renders judgment in favor of the plaintiffs Donald D. Bicknese and Evelyn H. Bicknese in Cause No. 65-PCC-256 against Albee Hammond Homes in the sum of $9,083 plus $2,500 attorney's fees which judgment shall bear interest at the rate of six (6) percent per annum from this date.

"It is further decreed that the satisfaction of either of said judgments shall constitute 'pro Tanto': the satisfaction of the other.

"It is further ordered that the cost herein be taxed against Albee Hammond Homes, Inc., and Albee Homes and William Gross.

"ALL OF WHICH IS ORDERED, this 7th day of April, 1969."

On October 17, 1968, appellants filed their motion for a new trial, together with memorandum affixed thereto, which reads as follows:

### "MOTION FOR A NEW TRIAL

"Come now Albee Hammond Homes, Inc.; Albee Homes, Inc.; and William Gross, hereinafter referred to as defendants, and move for a new trial on the following grounds:

"1. The court erred in overruling the defendants' Demurrer to the plaintiffs' compalint in cause no. 65-PCC-256.

"2. The court erred in overruling the defendants' Motion to make the plaintiffs' Complaint more specific.

"3. That the decision of the court is not sustained by sufficient evidence.

"4. That the decision of the court is contrary to law.

"5. The court erred in overruling the defendants' Motion made at the close of the plaintiffs' evidence, for a finding for the defendants on the plaintiffs' Complaint in cause no. 65-PCC-256 and Counter Claim in cause no. 65-PCC-742.

"6. The court erred in its special findings of fact number one entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"7. The court ererd in its special findings of fact number three entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"8. The court erred in its special findings of fact number four entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"9. The court erred in its special findings of fact number five entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"10. The court erred in its special findings of fact number six entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"11. The court erred in its special findings of fact number eight entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"12. The court erred in its special findings of fact number ten entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"13. The court erred in its special findings of fact number eleven entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"14. The court erred in its special findings of fact number twelve entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"15. The court erred in its conclusion of law number one entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"16. The court erred in its conclusion of law number two entered in cause no. 65-PCC-256 and cause no. 65-PCC-742.

"17. The court erred in its special findings of fact number two entered in cause no. 65-PCC-742.

"18. The court erred in its special findings of fact number three entered in cause no. 65-PCC-742.

"19. The court erred in its special findings of fact number four entered in cause no. 65-PCC-742.

"20. That the court erred in its conclusion of law number one entered in cause no. 65-PCC-742.

"21. That the court erred in its conclusion of law number two entered in cause no. 65-PCC-742.

"22. That the court erred in its conclusion of law number three entered in cause no. 65-PCC-742.

"23. Irregularity in the proceedings of the court by which the defendants were prevented from having a fair trial in this:

a. The overruling of the defendants' Motion to make specific directed to the palintiffs' Cross Complaint in cause no. 65-PCC-742, without a hearing at which the defendants' counsel was present and given an opportunity to be heard.

"24. Error of law occurring at the trial as follows:

a. The court erred in overruling the objection of the defendants to the reading into evidence by the plaintiffs' attorney of a statement contained in a letter by Sanford Schwaber, house counsel of Albee Homes, Inc., to the plaintiffs' attorney during the course of settlement discussions between the parties.

"25. The defendants have filed their motion for correction of order and the court has not ruled on same, if the court denies said motion, then the court acts in error.

s/ William J. Moran 
Attorney for Defendants 
William J. Moran 
53 Muenich Court 
Hammond, Indiana 
931-1700

## "MEMORANDUM

"The decision of the court is not sustained by sufficient evidence in that:

"A. The evidence failed to show that Joel Kaufman, who signed the purported contract, had the authority, actual, implied or apparent, to act as the defendant Albee's agent in the signing of the purported contract.

"B. The evidence showed that Joel Kaufman did not have the authority, actual, implied or apparent, to act as the defendant Albee's agent in the signing of the purported contract.

"C. The evidence failed to show that a contract was made.

"D. The evidence showed that no contract was entered into between the parties.

"E. The evidence failed to show that the conditions precedent to the formulation of the contract occurred.

"F. The evidence showed that the conditions precedent to the formulation of a contract were not performed.

"G. The evidence failed to show that the plaintiff performed the purported contract.

"H. The evidence failed to show that the plaintiffs' offer was accepted by the defendants, Albee.

"I. The evidence showed that the plaintiffs' offer to contract was not accepted by the defendants, Albee.

"J. The evidence failed to show the plaintiffs' purported and claimed damages.

"K. The evidence showed that there was no mutuality of obligation between the parties.

"L. The evidence showed that the defamatory letter written from Erwin Crewe Rosenau to the general manager of the Niles, Ohio Chamber of Commerce was done with the knowledge and authorization of the plaintiffs.

"M. The evidence showed that the defamatory statement concerning the defendants was not true.

"N. The evidence showed that the defamatory statements were defamatory per se.

"O. The evidence showed that the plaintiffs in defaming the defendants acted maliciously and the statements were in relation to the defendants' occupations.

"The decision of the court is contrary to law in that:

"A. The decision is not sustained by sufficient evidence.

"B. The decision permits a recovery on an incomplete contract.

"C. The decision permits a recovery on a contract where there was no acceptance of the offer.

"D. The decision permits a recovery on a contract where there was no mutuality of obligation.

"E. The decision permits a recovery on a contract where the conditions precedent to the formulation of the contract did not occur.

"F. The decision permits a recovery on a contract against a party who did not join in the agreement, either directly or through an authorized agent.

"G. The decision permits a recovery on quantum meruit where there was no evidence submitted as to the value of the claimed performance.

"H. The decision denies recovery to a party who was maliciously defamed.

/s/ William J. Moran
Attorney for Defendants
William J. Moran
53 Muenich Court
Hammond, Indiana
931-1700"

On December 9, 1968, the court overruled the motion for new trial in each of the cases.

Appellants timely filed their transcript and assignment of errors with the clerk of this court, which assignment of errors reads as follows:

"The appellants aver there is manifest error in the judgment and proceedings in this cause, which is prejudicial to appellants, in this:

"1. The court erred in overruling appellants' motion for new trial."

The statutory causes for a new trial are set forth in Burns' Ind. Stat., Vol. 2, pt. 2, § 2-2401, and contains eight specifications or causes for which a new trial may be granted. In reviewing the statute we are of the opinion that specifications of error numbered 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22 of appellants' motion cannot be

assigned as independent errors in its motion for a new trial, but must be assigned under the specification of "error of law occurring at the trial", the same being specification number 8 of said statute. We are constrained to hold that said causes numbered 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 22 of appellants' motion presented no question either to the trial court or to this court on appeal, since the statute does not recognize such specifications as causes for a new trial. *American National Bank and Trust Co.* v. *Hines* (1968), 143 Ind. App. 217, 239 N. E. 2d 589. See also: *Wiggins* v. *Rose* (1967), 141 Ind. App. 569, 230 N. E. 2d 636; *State of Indiana et al.* v. *Tolliver et al.* (1965), 246 Ind. 319, 205 N. E. 2d 672.

Specification of error 23 complains of the court's overruling defendants' motion to make more specific directed to plaintiffs' cross complaint in cause number 65 PCC 742. Appellants having waived any error in cause number 65 PCC 742, did at that time, waive their objections set forth in specification 23.

In specification 24 appellants complained of error of law occurring at the trial in that the court erred in overruling the objections of the defendants, appellants herein, to the reading into evidence by the plaintiffs' attorney of a statement contained in a letter by Sanford Schwaber, house counsel of Albee Homes, Inc., to the plaintiffs' attorney during the course of settlement discussions between the parties. Appellants have waived any objection, as set out in specification 24, for the reason that appellants have failed under the heading of "Argument" to specify such assigned error as being intended to be urged and have failed to concisely state the basis of the objection to the ruling complained of, exhibiting clearly the points of fact and of law being presented, and how they are applicable, citing the authorities and statutes relied upon.

Rules of the Supreme Court, Rule 2-17 (h).

*Sailer* v. *Whirlpool Corporation* (1969), 144 Ind. App. 426, 246 N. E. 2d 493. In this cause the single error assigned by

the appellant in the assignment of errors is the trial court's overruling the motion for a new trial. The court said:

> "The appellant has waived the first charged error in the motion for a new trial by failing to set forth in the argument portion of his brief a cogent argument together with the application of authorities to show in what manner the appellant was substantially prejudiced. Under Rule 2-17 of the Rules of the Supreme Court, the contentions of error must be supported by both reason and authority. If no authorities are cited in support of the contentions of error, the question is waived. See, Indiana Practice, § 2678, and authorities cited therein."

Appellants' specifications 3 and 4 of defendants' motion for a new trial are: (1) That the decision of the court is not sustained by sufficient evidence; and (2) That the decision of the court is contrary to law. We shall now consider these together in passing upon these specifications.

The contract entered into by and between the parties and on which this suit was instituted, was introduced into evidence and reads as follows:

### "PAINTED DISPLAY AGREEMENT

Gary, Indiana
Date April 17, 1963

To: Donald D. Bicknese
Evelyn H. Bicknese
Bick Sign Company

Gentlemen:

 *Albee Hammond Homes, Inc., R. R. #2 Rt. U.S. 30, Crown Point* hereby authorizes and directs you to paint and execute an advertising display at locations and at prices per month as indicated below, for *Albee Hammond Homes, Inc. R.R. #2, Rt. U.S. 30, Crown Point,* as per design to be mutually agreed upon, the specifications and more particular description of which said design are separately set out, signed by the parties attached hereto, and made a part hereof, in a first class workmanlike manner, using the best materials now obtainable and to maintain the same for a period of *Three (3) years.*

As agreed upon per attached sheet.

Agreement Void unless locations are signed & accepted by Joel Kaufman

/DB/

Note—All accounts are payable in 30 equal monthly payments, the first of which is due and payable upon the completion of the work on the selected locations. Last 6 months to be paid in advance.

TOTAL MONTHLY CHARGE—$200.00—/DB/

For the services specified herein *Albee Hammond Homes, Inc. R. R. #2 Rt. U.S. 30, Crown Point, Ind.* agrees to pay monthly in advance to Donald D. Bicknese and Evelyn H. Bicknese, or to whomsoever they may designate and at any place that Donald D. Bicknese and Evelyn H. Bicknese may designate, the aggregate sum of the price per month indicated above. Upon the failure of *Albee Hammond Homes, Inc., Crown Point, Ind.* to make any one of the monthly payments due under this agreement, Donald D. Bicknese and Evelyn H. Bicknese shall have the right to declare all of the remaining monthly payments provided by this agreement, due and payable without demand. The failure of Donald D. Bicknese and Evelyn H. Bicknese to exercise such right upon any default shall not be construed as a waiver of the right to so exercise such right upon any subsequent default.

"In the event of default of three monthly payments *Albee Hammond Homes, Inc., R.R. #2, Rt. U.S. 30, Crown Point, Ind.* agrees that the entire balance specified in this contract shall immediately become due and payable and agrees to pay reasonable attorney's fees and costs due to such non-payment.

In the event that any of the above locations become lost during the life of this contract, or cannot be secured—or in case at any time during the life of this contract any of the above displays are obstructed from view, or are wholly or partly destroyed or defaced, from any cause beyond your control, including the action of the natural elements, the happenings of any of such events shall not act as a breach or termination of this contract, but such lost or obstructed displays shall be replaced at other locations to be mutually

agreed upon, and such destroyed or defaced displays shall be restored to their former condition—any such nonprocurable locations shall be replaced with other locations to be mutually agreed upon; and the amount of advertising lost or not delivered while such replacement or substitution is being made shall be made up in an equivalent amount of advertising at the expiration of this agreement or at the election of Albee Hammond Homes, Inc., the following month's payment may be reduced on a pro-rated basis based on $20.00 per sign per month, for the time that any sign or signs is or are lost to advertising during the preceding month.

It is agreed that Donald D. Bicknese and Evelyn H. Bicknese reserves the right to refuse or to alter any copy which said Donald D. Bicknese and Evelyn H. Bicknese may deem for any reason objectionable or undesirable.

It is agreed that *Albee Hammond Homes, Inc., Crown Point, Ind.,* shall in no manner be considered the owner or lessee of the advertising displays herein above mentioned and that *Albee Hammond Homes, Inc., Crown Point, Ind.,* has no further right or control in or to the above advertising displays than are herein specified.

For the above *Albee Hammond Homes, Inc., Crown Point, Ind.,* hereby promises to pay to Donald D. Bicknese and Evelyn H. Bicknese the aggregate sum indicated above *$7,200.00* Dollars, in monthly installments as above provided, beginning on the date of the completion of the painting of the selected displays and the rendering of bills therefor; we further agree to pay for any displays not painted by reason of failure on our part to furnish or approve copy within fifteen (15) days after the date of this contract.

It is expressly agreed that Donald D. Bicknese and Evelyn H. Bicknese are not bound by any stipulations, representations, or agreements not embodied in this contract.

/s/ Joel Kaufman
Address: 7718 Lincoln Hwy.
Crown Point, Indiana

ACCEPTED:
/s/ Donald D. Bicknese
Donald D. Bicknese
/s/ Evelyn H. Bicknese
Evelyn H. Bicknese
Address: 1116 Aetna Street
Gary, Indiana"

Appellees' Exhibit B was identified by Donald D. Bicknese and introduced into evidence, and is as follows:

Gary-Hammond-Michigan City Region

Donald D. Bicknese testified that the map contained his signature and the signature of Joel Kaufman. He further testified that he and Mr. Kaufman had agreed on sites for sign boards by driving through the area and examining them on May 16, 1963. The sites are indicated by being marked on appellees' Exhibit B. The witness further testified that the appellees and the appellant Albee Hammond Homes, Inc., had entered into three or four previous contracts, some of which had been executed by Mr. Joel Kaufman. Further evidence disclosed that these former contracts had been honored by the parties thereto.

Appellants' witness testified that he had made several erasures and changes on the map but did not know when this was done, but at all times the map had been in his attorney's exclusive possession. He further testified that no objection had been made by Mr. Kaufman, Secretary-Treasurer of appellant corporation, to the locations after signing the map.

Two additional exhibits were offered and introduced into evidence, being a contract between appellees and Albee Homes, Inc., executed on behalf of Albee by Mr. Keppner and the witness Bicknese testified that the contract price had been paid. The other contract, dated May 21, 1963, between the parties had been executed on behalf of Albee by Joel Kaufman. Exhibit I was an agreement between appellees and Albee Hammond Homes, Inc., which had been signed by Joel Kaufman for Albee Hammond Homes, Inc., and had been paid.

Exhibit F was an agreement for work on a model homes sign. The order had been made by Mr. Kaufman and a change made on page 2 of Exhibit F and which had been made at the suggestion of a Mr. Sanstra, an attorney for Albee Homes.

All the signs purportedly called for by the contract were erected during June, July and August of 1963. The signs remained there for three years, with the exception of one which was blown down in August of 1965. Appellees received no payment for the erection of the signs.

Appellee Bicknese said that at the time of signing the contract his firm did not have any of the locations upon which the signs were eventually erected.

Appellee Bicknese, testifying further, stated that prior to the signing of the Standard Oil map (Exhibit B) on May 16, 1963, he and Joel Kaufman had toured the Gary metropolitan area and had returned to appellants' Schererville office and discussed locations generally and no specific locations were designated and no definite agreements were made as to the sites of the signs. Appellees did not, on May 16, 1963, have the leases for the locations nor the necessary building permits to erect the signs. Exhibits were introduced into evidence showing the leases of the ten locations where signs were to be erected.

Appellees first received notice that appellants did not approve the locations of the signs in December, 1963.

One Thousand Two Hundred Dollars ($1,200.00) was to be paid in advance and the same represented the last six months of the contract and there was a regular monthly payment due of $200 per month until the full sum of $7,200 was paid.

Appellee Evelyn H. Bicknese contacted Mr. Gross, Vice-president of appellant corporation, and made demand for $1,200 payment along with rentals for July and August of 1963, which was refused. Mrs. Bicknese denied the money was to be paid in advance and appellants respond that it was, and that appellees breached their contract by proceeding to perform the same without the advance payment.

Joel Kaufman testified that he was employed by appellants from September 6, 1962 to September, 1964. He said that he met with appellee Bicknese in April, 1963, to discuss the erection of some advertising signs and they rode through Gary, after which appellee said they would find other locations and sit down and agree upon them. Later appellee brought the map to Kaufman and indicated several locations, but was not sure he could get them.

Kaufman acknowledged his signature on the contract and the map. The witness Kaufman, on cross examination, said he thought he signed the map after signing the contract; that there were marks on the map when he signed it but they were general locations and not exact places where the signs were to be erected. He further said appellee was to come back and go over the territory and determine where the locations were to be, but appellee never returned.

Sam Gross, Vice-president of Albee Homes, Inc., admitted the conversation with Evelyn Bicknese in 1963 and her request for $1,200 payment. On the second call, in July of 1963, he was informed three signs had been completed and he agreed to pay for them, but nothing more. The witness Gross denied receiving a bill for the completion of ten signs on August 6, 1963. Mr. Gross had been president of appellant corporation in 1963.

The trial court, after hearing all the evidence in this cause, most of which was controverted by the respective parties, and after having seen and observed all the witnesses, considered their bias or prejudice or interest in the case and their demeanor upon the witness stand, and having duly considered the same, entered the court's special findings of fact and conclusions of law thereon, which are set out herein *ante,* and rendered its judgment in favor of the appellees and against appellants in the full amount of the contract price, less an amount deducted for one of the sign boards erected by appellees which had been blown down and not replaced.

Certainly, there was a serious conflict in the evidence as to whether Joel Kaufman was a general agent of appellants Albee and if he did have authority to bind appellants to the claimed contract; there was also a conflict in the evidence as to whether the claimed contract was or was not performed by appellees. There was a conflict in the evidence as to when the map indicating the locations of the ten signs was made and when it was executed. Each of the conflicts the court

determined in favor of the appellees and there was sufficient evidence for such findings.

There was a conflict in the evidence as to whether certain conditions were to be performed precedent to the contract and whether or not they did occur.

Our Supreme Court, in *Cleveland, etc., R. Co.* v. *Stewart* (1903), 161 Ind. 242, 68 N. E. 170, held:

> "In reviewing the action of the trial court upon the denial of a motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict, the lack of evidence must be so clear and complete that it would have been the duty of the trial court, on proper request, to have directed a verdict for the party complaining of the decision."

This rule would apply to the instant case where special findings of fact and conclusions of law were handed down the same as it applies to a case tried by a jury.

Certainly, in the case at bar, the plaintiffs, appellees, made a prima facie case which would not have been vulnerable to a motion for a directed verdict had this been a jury trial, and it was for the trial court, who saw and observed the witnesses to determine who he would believe and who he would disbelieve and then having done so it was his duty to enter his special findings, conclusions of law and judgment accordingly.

Judge Cooper, of this court, held, in *National Life and Accident Ins. Co.* v. *Neuhoff* (1967), 140 Ind. App. 603, 224 N. E. 2d 690,

> "This court in reviewing the evidence is not permitted to weigh such evidence, nor are we allowed to substitute our judgment for that of the trial court solely for the reason that we might feel disposed to rule the other way had we the prerogative of weighing the evidence or determining its preponderance. Such duty is that of the trial court. West's Indiana Law Encyclopedia, Vol. 2, Appeals, § 571, p. 482; *Fair Share Organization* v. *Mitnick, D/B/A Central 4th Street Drugs* (1964), 245 Ind. 324, 198 N. E. 2d 765, and authorities cited therein."

This court, in *Hudgins* v. *Deeds* (1969), 145 Ind. App. 418, 251 N. E. 2d 478, 18 Ind. Dec. 693, cited the case of *Couch* v. *Harmon* (1959), 129 Ind. App. 458, 157 N. E. 2d 303, which was a review of an Industrial Board case, as follows:

> " 'In this case it was a question of fact for the Board to determine whether or not at the time of the accident appellant was performing services pertaining to his employment as a domestic servant. *Before a finding and award will be disturbed upon the evidence it must be of such conclusive character as to force a conclusion contrary to that reached by the Board.*' " (Our emphasis.)

The court, in the *Hudgins* case, *supra,* also cited the case of *Hess* v. *Ohlen Bishop Co.* (1932), 96 Ind. App. 142, 183 N. E. 487, which made the following statement:

> " 'Although the finding in this case may appear to be manimestly against the weight of the evidence, the law of this state precludes this court from setting aside said finding where there is any competent evidence to support the same.' "

The law is well settled in Indiana that the Appellate Court does not have the authority to weigh the evidence. That we have not done and shall not attempt to do.

"To determine the sufficiency of the evidence we will consider only the evidence most favorable to the appellee, together with any inferences which may be drawn therefrom."

*Rowe* v. *Johnson* (1945), 223 Ind. 289, 60 N. E. 2d 529.

Having considered the evidence most favorable to the appellee we are of the opinion there was sufficient evidence to sustain the court's decision.

Appellants contend that they are not responsible on the contract in question for the following reasons:

1. Joel Kaufman was not a general agent of appellant Albee, and had no authority to bind appellants to the claimed contract.

2. The claimed contract failed because of indefiniteness, vagueness and uncertainty.

3. The conditions precedent to the contract did not occur.

4. The claimed contract was not performed by appellees.

It was necessary that the trial court construe the contract entered into by and between the parties and we shall now discuss the duties of the court in the construction of a contract.

This court held, in *Lawrence* v. *Cain* (1969), 144 Ind. App. 210, 245 N. E. 2d 663, which was an action for breach of contract, as follows:

"A written instrument should ordinarily be interpreted to mean what on its face it purports to mean, unless some good reason can be assigned to show that the words used can be understood in a different sense. Words are to receive their plain and literal meaning, even though the intention of the party drawing the contract may have been different from that expressed."

This court is of the opinion there was sufficient evidence of Joel Kaufman's being an officer of the appellant corporation and having, on prior occasions, bound the corporation by his execution of contracts for them and which the appellant accepted and abided by, for the court to correctly make its finding that Joel Kaufman was the manager and general agent of Albee Hammond Homes, Inc., and to further find he had authority to bind the appellants.

This court is of the opinion that for the reasons heretofore stated in this opinion the contract was not so indefinite, vague, and uncertain that it could not be construed and would necessarily fail, and that the trial court was correct in its construction of the contract.

We are of the further opinion that appellants' claim that prior payment of $1,200 was a condition precedent to the contract and appellants' further claim that the claimed contract was not performed by appellees is untenable and not sustained by the evidence.

In the case of *Keller et al.* v. *Reynolds* (1894), 12 Ind. App. 383, the appellee sued appellant for breach of written contract, wherein the appellee agreed to invest $3,000 in dental supplies under appellant's direction and the cost price was to be repaid to appellee from time to time when collected or if not collected within 30 days of the maturity of the accounts therefor, with an additional sum of 5% on the selling price.

Appellee further claimed in the complaint that the appellant sold $8,000 worth of teeth for which he was paid and violated the terms of the contract by refusing to account and make payment for the teeth.

Appellee avers that appellee elected to terminate the contract, and serve notice on appellant, who failed and refused to make settlement with her as provided in the contract.

The court, in discussing whether the performance was a condition precedent, said:

> "Whether or not the performance of those things to be done by appellee is to be regarded as a condition precedent is to be determined from an examination of the entire contract, giving to it a reasonable and fair interpretation. Those matters as to which appellee has failed to aver performance constitute but a part of the consideration for the agreement of appellants to pay to her the amounts named, and since the agreement has been in an essential feature performed by appellee and the benefit of such performance received by appellants and any loss to appellants from her failure to completely perform may be compensated by damages, such stipulations will be regarded as independent and not as constituting conditions precedent. *Pickens* v. *Bozell*, 11 Ind. 275; *Harman* v. *Moore*, 112 Ind. 221; *Cummings* v. *Pence*, 1 Ind. App. 317; *Boone* v. *Eyre*, 1 H. Bl. 273, 2 Pars. Conts. (5th ed.), 525-529.
>
> "There are, of course, many contracts in which the requirements must be regarded as conditions precedent or as covenants interdependent, performance of which must be alleged, but when fairly construed this contract is not of that character."

This brings us to the discussion of dependent and independent stipulations of a contract which may or may not constitute conditions precedent.

In the case of *Straus* v. *Yeager* (1911), 48 Ind. App. 448, 93 N. E. 877, the court set out a resume of the facts and then determined whether the covenants in the contract executed between the parties thereto were independent or dependent, as follows:

"We are called on to determine whether the covenants in the contract executed by appellants and appellee are dependent or independent. That is, on November 14, 1906, when this suit was filed, did the right of appellants to maintain this suit depend upon their execution of the covenant to convey, or upon a tender of a deed for the land? Did appellants have the right to divide the contract, and sue for the $9,000, which, by the terms thereof, became due on November 13, 1906? We have purposely set out all the material provisions of the contract to enable us properly to determine this question.

"In the case of *Loud* v. *Pomona Land, etc., Co., supra,* on page 576, the court, by Jackson, J., said: 'The question whether covenants are dependent or independent must be determined in each case upon the proper construction to be placed on the language employed by the parties to express their agreement. If the language is clear and unambiguous it must be taken according to its plain meaning as expressive of the intention of the parties, and under settled principles of judicial decision should not be controlled by the supposed inconvenience or hardship that may follow such construction. If parties think proper, they may agree that the right of one to maintain an action against another shall be conditional or dependent upon the plaintiff's performance of covenants entered into on his part. On the other hand, they may agree that the performance by one shall be a condition precedent to the performance by the other. The question in each case is, which intent is disclosed by the language employed in the contract? * * *' In the learned note of Serjeant Williams to the early case of *Pordage* v. *Cole* (1607), 1 Saund. 319i, 320a, it is said that 'if a day be appointed for payment of money, or part of it, or for doing any other act, and the day is to happen, or may happen, before the thing which is the consideration of the money, or other act, is to be performed, an action may be brought for the money or for not doing such other act before performance; *for it appears that the party relied upon his remedy, and did not intend to make performance a condition precedent;* and so it is where no time is fixed for

performance of that which is the consideration of the money or other act.'

"In the syllabus to the case of *Goldsborough* v. *Orr* (1823), 8 Wheat. *217, 5 L. Ed. 600, it is said that 'where the acts stipulated to be done, are to be done at different times, the covenants are to be construed as independent of each other.'

"In the case of *Goodwin* v. *Lynn* (1827), 4 Wash. C. C. 714, Fed. Cas. No. 5,553, the rule is laid down that to ascertain 'whether covenants are dependent or not, the intention of the parties is to be discovered, rather from the order of time in which the acts are to be done, than from the structure of the instrument.' " (Our emphasis.)

In the case of *Claypool* v. *German Fire Ins. Co.* (1903), 32 Ind. App. 540, 70 N. E. 281, the court said:

"Where the mutual promises which constitute a contract are not to be performed simultaneously, but where the acts to be performed by one party must or may precede those to be performed by the other, the promises are independent, and not dependent. *Mountjoy* v. *Mullikin*, 16 Ind. 226; *Watson* v. *Deeds*, 3 Ind. App. 75; *Wile* v. *Rochester Improv. Co.*, 24 Ind. App. 422."

In *Feick* v. *Stephens et al., In Re Sandusky Auto Part & Motor Truck Co.* (1918), 250 F. Rep. 185, which was an appeal decided by the Circuit Court of Appeals, Sixth District, the facts were substantially that appellant Feick had submitted estimates to the Sandusky Auto Parts & Motor Truck Co. and a verbal contract was entered into between them for the erection of certain buildings in accordance with certain plans. No time was fixed in the contract for the completion of the work or any specific part of it. By December, the work had progressed so that the plant could be operated.

"Appellee's contention that Feick had a right to abandon further performance under the contract because of the failure to pay in accordance with its provisions and to sue for damages or in the quantum meruit for the value of the work done, or after March, even upon the contract as substantially performed, subject only to recoupment for the value of the September work, may be conceded, but he was not bound so to do."

The court said further:

> "He was not compelled to take chances that what he had done would be held to be a substantial performance of the contract. He had a right to keep the contract in force, to refuse his assent to any repudiation or rescission and fully to complete the work."

It is our opinion that the trial court correctly determined that the covenants in the contract were independent and not conditions precedent. Appellees had the right after they had completed the first three sign boards to cease further operations under the contract and sue for the $1,200 down payment, or if they so elected, they had the further independent right to complete the contract, as they did, and after the completion of the same file their suit for the entire amount due on the contract between the parties.

It appears to this court that the appellees relied upon their remedy and did not intend to make the prepayment a condition precedent; and that the contract was fully performed by appellees as so determined by the trial court, and that appellants' objection that the claimed contract was not performed by appellees is without merit.

We cannot agree with appellants' contention that the decision of the court is contrary to law. The law is well settled in Indiana that:

> "It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that is contrary to law." *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669.

A careful consideration of all the evidence leads us, as heretofore stated, to the conclusion that the evidence is most conflicting and that reasonable men could easily reach opposite conclusions, and the evidence would not lead to but one conclusion. Reasonable men could hardly be expected to all come to the same conclusion under the evidence in this cause.

Applying the rules as above set out, we must come to but one conclusion, which is that the decision of the court is sustained by sufficient evidence and is not contrary to law.

Finding no reversible error the judgment of the trial court is hereby affirmed.

It is further decreed that the appellants pay the costs of this action.

Carson and Cooper, JJ., concur; Sullivan, J., concurs in result only.

NOTE.—Reported in 252 N. E. 2d 808.